IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BARBARA BROWN, )
)
          Plaintiff, )
)
          -versus- )   Civil Action No.: 1:04CV00798
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
          Defendant. )

## **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Barbara Brown, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act").[1] The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on April 2, 1999 (protective filing date,

---

[1] The Social Security Disability Insurance Program was established by Title II of the Act, 49 Stat. 622 (codified at 42 U.S.C. § 401 et seq.), and the Supplemental Security Income Program was established by Title XVI of the Act, 86 Stat. 1465 (codified at 42 U.S.C. § 1381 et seq.).

March 16, 1999), alleging a disability onset date of August 10, 1998. Tr. 86, 276-77. The applications were denied initially and upon reconsideration. Tr. 27, 32; 280-81. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 72. Present at the hearing, held on January 5, 2000, were Plaintiff, her attorney, and a vocational expert (VE). Tr. 309.

The ALJ did not find that Plaintiff was disabled for purposes of Act (Tr. 38), and Plaintiff requested review of his decision (Tr. 78). The Appeals Council vacated the ALJ's decision and remanded Plaintiff's case for reconsideration. Tr. 82. The ALJ conducted a second hearing on April 29, 2003, attended by Plaintiff, her attorney, and a VE. Tr. 289. By decision dated August 27, 2003, the ALJ again determined that Plaintiff was not disabled. Tr. 10. On June 25, 2004, the Appeals Council denied Plaintiff's request for review (Tr. 4), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

2

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for a wide range of light work activity as follows: the claimant is capable of light work activity with only occasional stooping, crouching, kneeling, and crawling in a low stress, nonproduction environment. The claimant is only capable of simple, repetitive, and routine, tasks. In addition, the claimant can only occasionally deal with co-workers and can only occasionally deal with the public.

8. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

11. The claimant has skills from semi-skilled work previously performed as described in the body of the decision, but they are not transferable (20 CFR §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as Inserting Machine Tender

(Dictionary of Occupational Titles # 208.685-018), Folding Machine Tender (DOT # 208.685-014), and Photocopy Operator (DOT # 207.685-014).

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

Tr. 22-23.

**Analysis**

In her brief before the court, Plaintiff claims only one error in the ALJ's decision, but she actually poses two separate arguments: (1) that the ALJ erred in not adopting the opinion of her treating physician, and (2) that the ALJ failed to include all of her limitations in the hypothetical he relied on in addressing the step five burden. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing any other work. 20 C.F.R. §§ 404.1520 and 416.920.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (the issue before the court is not whether the claimant is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law).

Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was forty-two years of age. Tr. 14. The ALJ found that she has more than a high school education and past relevant work as a case aide, teacher aide, sewing machine operator, and booking clerk. He determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.

The ALJ also decided that Plaintiff met the disability insured status requirements of the Act through the date of his decision. Further, he found the medical evidence to establish that Plaintiff suffered from the severe impairments of depressive disorder, not otherwise specified ("NOS"), general anxiety disorder, personality disorder, NOS, post traumatic stress disorder ("PTSD"), and

6

degenerative disc disease. Tr. 17. The ALJ concluded, nevertheless, that none of these impairments met or equaled any of the Listing of Impairments.

Treating Physician Opinion

According to Plaintiff, see Pl.'s Br. at 6-8, the ALJ presented the VE with three hypotheticals. In the first, the ALJ described a claimant who could perform only simple, routine, repetitive tasks ("SRRTs") in a low stress, non-production job, with limited interaction with coworkers and the public.[3] Tr. 303-04. The VE responded that this individual could perform the jobs of inserting machine tender, holding machine tender, and photocopy operator. Tr. 304.

As to the second hypothetical, the VE responded that there were no jobs available for an individual with only a poor to no ability to complete a normal workday and workweek without interruptions. Tr. 305. The VE's answer to a third hypothetical was that no jobs existed for a claimant who repeatedly had episodes of decompensation. Tr. 306. In addition, Plaintiff's counsel questioned the VE, if the hypothetical claimant would likely be absent from work more than three days a month, if work would be precluded, to which the VE answered yes. Tr. 307. As stated above, however, the ALJ found only that Plaintiff would be limited to a low stress, nonproduction environment, be capable of SRRTs, and only occasionally deal with co-workers and with the public. See page 3, supra (quoting Tr. 22).

---

[3] The court will not address the physical limitations in this Recommendation, as Plaintiff's treating physician, a psychiatrist, opined only as to her mental abilities. See Tr. 228-32.

Plaintiff argues that all of the above limitations were included in the opinion of her treating psychiatrist, Dr. George Jackson III, of Duke University Medical Center ("DUMC"). She contends that the ALJ erred by not adopting Dr. Jackson's opinion. "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight only if it is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527 and 416.927. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

In discussing the opinion, the ALJ noted that Dr. Jackson found Plaintiff had a severe impairment, but not one of listing level severity. Tr. 19 (citing Tr. 228-32). He added that the opinion was dated. Dr. Jackson's opinion was signed on January 5, 2000 (see Tr. 232), the same date as Plaintiff's *first* hearing (see Tr. 309).

8

Plaintiff continued to see caregivers at DUMC[4] through June 2001, an additional eighteen months. See Tr. 252.

Plaintiff saw Dr. Jackson on April 10, 2001, two months prior to her termination of treatment with him. See Tr. 256. She reported that her symptoms were stable and her medications helped. Plaintiff indicated she was looking for work and contemplating further education to become a certified nursing assistant ("CNA"). On her mental status exam, Dr. Jackson's observations were affect appropriate, attitude cooperative, cognition normal, well-groomed, oriented times four, no hallucinations or delusions, full sensorium, no suicidal or homicidal thoughts, and a logically directed thought process. Plaintiff's cognition, mood, psychomotor behavior, and speech were all normal, and her insight, judgment, and memory were all intact. He concluded that Plaintiff's mental illness was stable and that she was "moving on with her life." Tr. 257.

May 15, 2001, was Plaintiff's next appointment and the last where Dr. Jackson assessed her condition. Her childhood abuser had recently moved into the family home, and Plaintiff's PTSD symptoms had increased. Tr. 254. Yet she had no suicidal ideation and "plann[ed] to move forward in her life," starting CNA school in three weeks. Id. Her mental status exam was unchanged, and the doctor noted that Plaintiff seemed "to be coping fairly well." Tr. 255.

---

[4] Although several doctors joined Dr. Jackson in Plaintiff's care, he signed off on every record; for ease of reference, he will be the only DUMC physician referred to individually.

9

Even prior to this time, Plaintiff's records fail to support a disabling impairment, as there are sometimes lengthy periods between visits. See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure, inter alia, "to sustain a consistent medical regimen for treatment" found inconsistent with his complaints). Although Plaintiff's AOD is August 10, 1998, there is no record of a visit with her mental caregivers at Kaiser Permanente until October 14. See Tr. 150-53. In November, she apparently missed about as many appointments as she attended. See Tr. 140-47.

Plaintiff's last visit at Kaiser Permanente was on February 24, 1999, and she did not have another therapeutic appointment, with The Durham Center ("TDC"), until April 28, 1999. See Tr. 163, 181. Her second, and last, TDC visit was on May 5. See Tr. 179. Plaintiff's first appointment at DUMC was not for another three months, on August 4, 1999. See Tr. 273. Although Plaintiff saw Dr. Jackson on September 1 and 20, she did not return until December 1, 1999, although she had been advised to return in one week. See Tr. 270-72.

Plaintiff went back to DUMC on December 17, but not again until two months later, after setting an appointment for January 6, 2000. See Tr. 268-69. At this March visit, Plaintiff was already showing improvement; Dr. Jackson noted that Plaintiff spoke "without much focus on herself." Tr. 267. Her insight and judgment were good, and "the therapeutic alliance continue[d] to strengthen." Id.

10

Although therapy continued "as per her request," Tr. 266, Plaintiff's visits thereafter continued to be sporadic: April 17, May 24, June 19, and then none for three months. See Tr. 263-66. At her May appointment, Plaintiff conveyed plans to obtain part time employment. Tr. 265. A December 8, 2000, visit was immediately preceded by one on October 24, and next followed by a March 13, 2001, visit. See Tr. 258-61. In October, Plaintiff described to Dr. Jackson "plans to start rehabilitation in [an] effort to get a job." Tr. 261. He observed that Plaintiff's mental illness appeared stable, and she was "making efforts to obtain employment and better her situation." Tr. 257.

In March, Plaintiff reported that her symptoms were stable. Tr. 258. She had recently completed a part-time job and planned to start a second. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with [disabling] complaints[.]"). Dr. Jackson assessed her depression as "improved," and noted that Plaintiff "plans to become more productive for herself and children." Tr. 259. On April 10, 2001, Plaintiff again reported stable symptoms, was "upset" that she was unable to find "appropriate" work, and thought she might return to school to become a CNA. Tr. 256. Dr. Jackson assessed her mental illness as stable and noted that Plaintiff "is moving on with her life." Id.

On May 15, Plaintiff described the situation with her abuser and, in spite of increased PTSD symptoms, discussed "moving forward in her life," including starting

11

CNA school. Tr. 254. Dr. Jackson concluded Plaintiff was "coping fairly well," and talked with her about the termination of her care. Tr. 255. At Plaintiff's last visit with Dr. Jackson four weeks later, he talked about her "long history of missed appointments and treatment noncompliance," and noted that she had come in that day forty-five minutes late. Tr. 253. The doctor referred her to TDC.

Plaintiff reported to TDC on June 26, 2001, and again on July 16, but not for an August 9 appointment. See Tr. 245, 248, 250. TDC personnel noted on August 28 that Plaintiff was not following-up with her appointments. Tr. 245. There are no records of a succeeding visit until November 15, and then not again until April 10, 2002 – a record interval of five months. See Tr. 240-42. Plaintiff's improvement, however, continued, as she reported overall improvement in her depressive symptoms, and that she was looking for a job. Tr. 242.

Plaintiff failed to show for appointments on June 4, see Tr. 239, and August 12, although that appointment was set up as "urgent," Tr. 236. A July 22nd record shows she did not come to the walk-in clinic as advised. Tr. 236. Plaintiff set a new record when she went six and a half months between visits, eventually returning to TDC on October 25, 2002. See Tr. 235.

Although Plaintiff submitted records through March 28, 2003, see Tr. 251, there are no records of further therapeutic visits. At this last visit, she reported that she was doing well on her medications and, other than having a poor appetite, she was "doing well." Tr. 235. Plaintiff was enjoying herself and time with her

12

grandchild. She told the caregiver, "[S]he feels like she has energy for things and that she is motivated and doing well." Id. The record reveals that Plaintiff was well-groomed, cooperative, and pleasant. Her mood was good and affect appropriate. Plaintiff was not scheduled to return for three months.

Further, Plaintiff often reported that her medications helped her symptoms, although at no time did she state her symptoms were completely resolved. See, e.g., Tr. 138, 225, 235, 244, 245, 271, 272, 323. But if symptoms can be reasonably controlled by medication, they may not be considered disabling under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Moreover, there is no requirement under the Act that a claimant be found symptom-free in order to be found not disabled. Cf. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (a claimant's inability to work pain-free is not sufficient reason to support a finding of disability).

The ALJ also noted that Dr. Jackson found Plaintiff's ability and aptitude to perform unskilled work was mostly good to fair, Tr. 19, and this opinion was incorporated into the ALJ's hypothetical. But the ALJ disagreed with the remainder of Dr. Jackson's mental functioning findings based on Plaintiff's improvement, as above discussed. Overall, the record contains substantial evidence to support the ALJ's analysis of Dr. Jackson's opinion, and his decision not to incorporate the whole of the doctor's findings into his hypothetical to the VE.

13

Step Five Burden

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "The purpose of bringing in a [VE] is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). See also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). But the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

Plaintiff objects that the ALJ relied on the VE's response to the first hypothetical which described a claimant capable of performing SRRTs in a low stress, non-production job, with limited interaction with coworkers and the public. But as discussed above, the ALJ agreed with Dr. Jackson's opinion that Plaintiff could perform unskilled work. Because the ALJ found, as did Dr. Jackson (see Tr. 17, 19), that Plaintiff suffered from moderate difficulties in maintaining social

14

functioning, he limited the hypothetical claimant's interaction with the public and coworkers.

The VE precluded work for a hypothetical claimant who could not complete a normal workday or workweek without interruption. But Plaintiff had reported that she had completed one part time job[5] and planned to start another.[6] Tr. 258. She later complained of her inability to find appropriate work and discussed her plans to enter a second profession. Tr. 256. At no time did Plaintiff report that she was fired because she had missed work, or for any other reason.

The VE testified further that a claimant who suffered repeated episodes of decompensation would be precluded from working. Although the ALJ also discounted agency experts' findings because of their age, see Tr. 19, these opinions pre-date Dr. Jackson's by only several months. The psychiatrist who conducted Plaintiff's consultative examination mentioned no episodes of decompensation. See Tr. 204-07. A nonexamining expert found "insufficient evidence" to assess this criteria. Tr. 215. There is, in fact, no evidence in the record that Plaintiff suffered such episodes while employed and, as discussed by the ALJ and hereinabove, there is evidence that Plaintiff's condition improved to the point that she was engaging in job seeking and further education. As there is substantial evidence to support the

---

[5] Plaintiff nevertheless testified that she had not worked since her first hearing. Tr. 301.

[6] This may explain Plaintiff's cessation in therapy from December 8, 2000, through March 13, 2001.

15

ALJ's first hypothetical to the VE, the ALJ can reasonably rely on the VE's response thereto in order to satisfy the step five burden.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, IT IS RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED. To this extent, Plaintiff's motion for summary judgment (Pleading no. 15) seeking a reversal of the Commissioner's decision should be DENIED, Defendant's motion for judgment on the pleadings (Pleading no. 17) should be GRANTED, and this action should be DISMISSED with prejudice.

　　　　　　　　　　　　　　　　　　　　　　／s／ Wallace W. Dixon
　　　　　　　　　　　　　　　　　　　　　　WALLACE W. DIXON
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

November 28, 2005